THE STATE OF OHIO, APPELLANT, *v.* DARMOND ET AL., APPELLEES.

[Cite as *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966.]

*The holding in* Lakewood v. Papadelis *that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery" applies equally to discovery violations committed by the state and to discovery violations committed by a criminal defendant.*

(Nos. 2012-0081 and 2012-0195—Submitted January 9, 2013—Decided March 21, 2013.)

APPEAL from and CERTIFIED by the Court of Appeals for Cuyahoga County, Nos. 96373 and 96374, 2011-Ohio-6160.

_____

SYLLABUS OF THE COURT

The holding in *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus, that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery" applies equally to discovery violations committed by the state and to discovery violations committed by a criminal defendant.

_____

O'NEILL, J.

{¶ 1} On the first day of a nonjury felony trial, during the testimony of the first witness, the trial court became aware that the state had failed to disclose to the defendant some evidence related to the case. The record is clear that the

discovery violation was unintentional. The court noted that the undisclosed evidence "could be inculpatory or exculpatory," but it never made a finding one way or the other. On motion by the defense, the court declared a mistrial and dismissed the charges with prejudice. The appellate court affirmed, concluding that the trial court had not abused its discretion. For the reasons that follow, we hold that the failure of the trial court to explore whether a less severe sanction was appropriate was an abuse of discretion. We accordingly reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

{¶ 2} In its analysis, the appellate court considered *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), which held that when contemplating a sanction for a discovery-rule violation, a trial court must conduct an inquiry into the surrounding circumstances and "must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Id.* at paragraph two of the syllabus. The appellate court distinguished *Lakewood* from this case on the basis that *Lakewood* involved a discovery violation committed by a defendant rather than by the state.

{¶ 3} The appellate court then certified a conflict on that issue because other appellate courts have applied *Lakewood* to cases involving discovery violations committed by the state. We accepted the conflict for review and also accepted the state's discretionary appeal.

{¶ 4} We conclude that under the current discovery rules, *Lakewood* applies to all discovery violations, including those committed by the state. A contrary holding would be at odds with this court's repeated guidance that trials are to be conducted on a level playing field and Crim.R. 16's requirement that remedies for discovery violations apply to the defense and the prosecution equally. We therefore answer the certified question in the affirmative.

2

## I. Facts and Procedural History

{¶ 5} The two defendants-appellees in this case, Demetrius Darmond and Iris Oliver, were jointly indicted in August 2010 on felony charges of trafficking in drugs and possession of drugs, with specifications, and with additional charges as to Darmond. Both defendants pled not guilty and waived their right to a jury trial, electing instead to be tried by a judge. The state and the defendants (represented by separate counsel) engaged in reciprocal discovery upon the defendants' demands for discovery pursuant to Crim.R. 16, and the case proceeded to a bench trial.

{¶ 6} After the parties' opening statements, the state called its first witness, a special agent with the Ohio Bureau of Criminal Identification and Investigation ("BCI"). The BCI agent testified that on March 13, 2010, she was on package-interdiction duty at a FedEx facility after receiving a tip from law-enforcement authorities. She testified that she had discovered three suspicious packages that day, all sent from Arizona, that were similar to each other. After a drug-sniffing dog alerted to the packages, she obtained search warrants, opened the packages, and found marijuana inside. The packages were addressed to three different people at three different addresses.

{¶ 7} One of those packages, which was addressed to defendant Oliver's street address but stated a name other than that of any resident of the address as the addressee, was the basis for the indictment in this case. The agent placed the marijuana back in that package and rewrapped it. The package was delivered to Oliver's address under surveillance by officers of the Cuyahoga County Sheriff's Office, who were accompanied by the BCI agent, on March 16, 2010. Defendant Darmond later arrived at Oliver's residence and put the package in his car. He was then arrested.

{¶ 8} The special agent was again on package-interdiction duty on March 17, 2010, and discovered four more suspicious packages, all sent from

Arizona, that she opened after obtaining warrants. Each contained marijuana. One of those packages was addressed to Oliver's street address but stated a name other than that of any resident as the addressee. The agent took that package to the Cuyahoga County Sheriff's Office. That package was not delivered to Oliver's address, because Darmond had been arrested the previous day. The other three packages found on March 17 were addressed to three separate addresses different from any address on any of the other packages the agent had already intercepted.

{¶ 9} The agent prepared separate reports for each of the seven packages. In the report relating to the package that was delivered to Oliver's address, the agent noted that a second package addressed to Oliver's residence and containing marijuana had been intercepted on March 17, but other than that, the reports did not mention the other packages. The agent did not have the other reports with her at trial, was not involved with any follow-up investigations that might have taken place on the other five packages, and was able to remember only sketchy details of the police action regarding those packages after she discovered them. As to at least one other package, she believed that a controlled delivery had been made to the address on the package and that an arrest had resulted, but she was unsure of the specifics.

{¶ 10} The record clearly supports the fact that the assistant prosecuting attorney handling the case and both defense attorneys were unaware of the other five packages prior to the BCI agent's testimony. In response to the defendants' pretrial discovery requests, the state had provided the BCI agent's reports relating to the two packages the prosecutor knew to exist and also provided other information. After several sidebars during the agent's testimony, the defense attorneys moved the trial court to dismiss the case with prejudice due to the state's failure to disclose prior to the trial the interception of the five additional packages and the reports regarding them.

4

**{¶ 11}** The defense attorneys renewed the motion to dismiss after the agent completed her testimony, arguing that the undisclosed information was exculpatory and that dismissal was the only remedy. In response, the prosecutor asserted that the undisclosed packages were not exculpatory evidence. He also emphasized that neither he nor the BCI agent had been trying to hide anything.

**{¶ 12}** After a one-hour recess, the parties conducted discussions off the record, and the case then resumed on the record. The prosecutor again argued in opposition to the motions to dismiss that it was not clear that the undisclosed packages were exculpatory, and he suggested that they may have instead been inculpatory because further investigation may have shown them to be evidence implicating the defendants in a scheme to distribute drugs.

**{¶ 13}** After the defense attorneys again pressed for dismissal with prejudice, the trial court reviewed the details of the situation. The court noted that the undisclosed evidence "could be inculpatory or exculpatory" and then stated that the full details regarding all seven packages and what occurred in the aftermath of their discovery should have been supplied to the defense. The court concluded the proceedings by declaring a mistrial and dismissing the case with prejudice, barring the state from further indicting the defendants.

**{¶ 14}** The Eighth District Court of Appeals affirmed, holding that the trial court had not abused its discretion. *State v. Darmond*, 8th Dist. Nos. 96373 and 96374, 2011-Ohio-6160, ¶ 26. In considering the preference expressed in the second syllabus paragraph of *Lakewood* for imposing the least severe sanction consistent with the purpose of the discovery rules, the appellate court distinguished *Lakewood* and declined to apply it. *Id.* at ¶ 15-18. The court in essence interpreted that case's holding as applying only to cases involving a defendant's discovery violation and did not extend it to cases involving a discovery violation committed by the state.

**{¶ 15}** The court of appeals determined that its resolution of the case conflicted with the decisions of the Third Appellate District in *State v. Engle*, 166 Ohio App.3d 262, 2006-Ohio-1884, 850 N.E.2d 123 (3d Dist.), and the First Appellate District in *State v. Siemer*, 1st Dist. Nos. C-060604 and C-060605, 2007-Ohio-4600, 2007 WL 2541121. The court of appeals then certified a conflict on the following issue: "Does the holding in *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), apply equally to instances where the state has committed a discovery violation?"

**{¶ 16}** This court determined that a conflict exists and ordered the parties to brief the certified issue (case No. 2012-0195), accepted jurisdiction over the state's discretionary appeal (case No. 2012-0081), and consolidated the two cases for consideration, 131 Ohio St.3d 1497 and 1498, 2012-Ohio-1501, 964 N.E.2d 438 and 439.

## II. Analysis

**{¶ 17}** Our consideration is guided by Crim.R. 16, which was extensively amended on July 1, 2010. The pertinent provisions for purposes here are Crim.R. 16(A) and 16(L)(1). Crim.R. 16(A) provides:

> **(A) Purpose, Scope and Reciprocity.** This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.

**{¶ 18}** Crim.R. 16(L)(1) provides:

**(L) Regulation of Discovery.**

(1) The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

**{¶ 19}** The overall objective of the criminal rules " 'is to remove the element of gamesmanship from a trial.' " *Lakewood*, 32 Ohio St.3d at 3, 511 N.E.2d 1138, quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). The purpose of the discovery rules "is to prevent surprise and the secreting of evidence favorable to one party." *Id.*

A. The Conflict Issue: Does the Holding in *Lakewood* Apply to Discovery Violations Committed by the State?

**{¶ 20}** Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court and should be imposed equally, without regard to the status of the offending party. The state has conceded that it should have disclosed the existence of the other five packages prior to the trial pursuant to Crim.R. 16 and therefore does not contest the trial court's conclusion that a discovery violation occurred. The state asserts that the trial court's order of dismissal with prejudice was flawed because the trial court failed to consider whether less severe sanctions were appropriate given the circumstances. We agree.

**{¶ 21}** In *Lakewood*, the defendant committed a discovery violation by failing to turn over his witness list to the city, and as a sanction, the trial court excluded the testimony of all the defendant's witnesses. 32 Ohio St.3d at 2, 511 N.E.2d 1138. In reviewing the propriety of the sanction, this court first noted that the effect of the sanction was to deny the defendant his Sixth Amendment right to present a defense. *Id.* at 4. This court then adopted the rationale of courts in other jurisdictions that had reviewed similar situations and held that a trial court must inquire into the circumstances surrounding a discovery violation, must balance the competing interests, and "*must impose the least severe sanction that is consistent with the purpose of the rules of discovery.*" (Emphasis added.) *Id.* at 5 and at paragraph two of the syllabus.

**{¶ 22}** *Lakewood* mentions several factors to be considered in the balancing test: the extent of surprise or prejudice to the state if the testimony were allowed, the impact that excluding the testimony would have on the trial, whether the violation was willful or in bad faith, and the effectiveness of less severe sanctions. *Id.* at 5.

**{¶ 23}** A number of Ohio appellate courts, including the courts that issued the judgments certified as being in conflict with the appellate court's judgment in this case, have determined that *Lakewood* applies to discovery violations committed by the state just as it applies to discovery violations committed by the defense. For example, in *Siemer*, 2007-Ohio-4600, at ¶ 9, the First District recognized that the balancing test in *Lakewood* was created in the context of a defendant's discovery violation, but concluded that the holding in *Lakewood* is "equally applicable to cases involving discovery violations committed by the state." The *Siemer* court cited a number of decisions, from the majority of Ohio's appellate districts, in support of that conclusion. *Id.*

**{¶ 24}** In *Engle,* 166 Ohio App.3d 262, 2006-Ohio-1884, 850 N.E.2d 123, the Third District applied *Lakewood* to reverse a trial court's decision dismissing

the charges against the defendant as the sanction for a discovery violation committed by the state. The *Engle* court observed that the trial court had failed to determine "whether a less severe sanction would be appropriate" and failed to "properly balance the need to impose a sanction with the purpose of the discovery rules." *Id.* at ¶ 10.

{¶ 25} The appellate court in this case, however, declined to apply *Lakewood* because this case involved a discovery violation by the state, not a defendant. In so doing, the court relied on precedent from its district: *State v. Jones*, 183 Ohio App.3d 189, 2009-Ohio-2381, 916 N.E.2d 828 (8th Dist.). *Jones* reasoned that *Lakewood* should not be applied in cases involving the state's failure to provide discovery, because *Lakewood* was primarily concerned with the accused's ability to present a defense. *Jones* at ¶ 12, citing *State v. Crespo*, 7th Dist. No. 03 MA 11, 2004-Ohio-1576, 2004 WL 615705, ¶ 11 ("the holding in *Lakewood* is not directly applicable in cases where sanctions are imposed upon the prosecution").

{¶ 26} We recognize that the analysis in *Lakewood* was driven to a large extent by the consideration that the sanction imposed by the trial court effectively deprived the defendant of his Sixth Amendment right to present a defense. However, we do not agree that this consideration prevents the application of *Lakewood* to a case in which it is the state that has committed a discovery violation.

{¶ 27} In *State v. Parker*, 53 Ohio St.3d 82, 86, 558 N.E.2d 1164 (1990), which involved a discovery violation committed by the state, this court cited *Lakewood*, 32 Ohio St.3d at 5, 511 N.E.2d 1138, with approval for the propositions that a trial court must inquire into the circumstances of the alleged violation of Crim.R. 16 and must impose the least severe sanction consistent with the purpose of the discovery rules. *Parker* strongly supports the state's position on the certified issue.

**{¶ 28}** Even if *Parker* left room for debate regarding whether *Lakewood* applies to discovery violations committed by the state, the 2010 amendments to Crim.R. 16 removed any doubt. Current Crim.R. 16 essentially places the state and a criminal defendant who has filed a discovery demand on equal footing as a trial court contemplates the imposition of the appropriate sanction for a discovery violation.

**{¶ 29}** Current Crim.R. 16(A) applies to "all parties in a criminal case," and "all duties and *remedies*" of the rule apply "to the defense and the prosecution equally" and are "intended to be reciprocal." (Emphasis added.) The Staff Notes to the 2010 amendment to Division (A) of Crim.R. 16 state that the purpose of the revisions "is to provide for a just determination of criminal proceedings and to secure the fair, impartial, and speedy administration of justice." To that end, the Staff Notes point out, the current rule "expands the reciprocal duties in the exchange of materials" and "balances a defendant's constitutional rights with the community's compelling interest in a thorough, effective, and just prosecution of criminal acts."

**{¶ 30}** In *Lakewood,* this court viewed the sanction imposed by the trial court as extremely severe because it effectively deprived the defendant of the ability to present a defense, and the court therefore held that the sanction should not have been imposed without the trial court's first weighing and rejecting the feasibility of less severe sanctions. In the same way, the sanction of dismissal with prejudice in this case is extremely severe because it forecloses the possibility of further prosecution; such a sanction should not be imposed without a trial court's specifically weighing and rejecting the feasibility of less severe sanctions.

**{¶ 31}** Crim.R. 16's emphasis on equal and reciprocal treatment of parties clarifies that the strong preference expressed in *Lakewood* for imposing the least severe sanction that will further the purposes of the discovery rules is a critical consideration that must be taken into account in any criminal case before a severe

sanction is imposed for a discovery violation. We accordingly conclude that *Lakewood* applies to discovery violations committed by the state, and we therefore answer the certified question in the affirmative.

## B. Did the Trial Court Abuse Its Discretion?

**{¶ 32}** Having determined that *Lakewood* applies in this case, we next consider whether the trial court abused its discretion in dismissing the case with prejudice.

**{¶ 33}** As we observed in *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983), a trial court has discretion in determining a sanction for a discovery violation. This long-standing principle continues in force after the recent amendments to Crim.R. 16. Crim.R. 16(L)(1) is identical to former Crim.R. 16(E)(3) in detailing a trial court's authority to issue orders in the wake of a party's failure to comply with discovery obligations, and in particular provides that the trial court may issue any order "it deems just under the circumstances." 34 Ohio St.2d lvii. *See also* Staff Notes to 2010 amendment to Division (L) of Crim.R. 16 ("The trial court continues to retain discretion to ensure that the provisions of the rule are followed. This discretion protects the integrity of the criminal justice process while protecting the rights of the defendants, witnesses, victims, and society at large").

**{¶ 34}** A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). An abuse of discretion includes a situation in which a trial court did not engage in a " 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *Id*.

**{¶ 35}** In *Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689, we established three factors that should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution. The three *Parson* factors a judge should consider are (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *Id.* at syllabus. *See also State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 115.

**{¶ 36}** Several of the factors discussed in *Lakewood* are similar to those expounded in *Parson,* including the degree of prejudice to the opposing party and whether the violation was willful or in bad faith. *See Lakewood*, 32 Ohio St.3d at 5, 511 N.E.2d 1138.

**{¶ 37}** The application of the three *Parson* factors to this case is unclear. The record definitively shows that the discovery violation here was not willful, but was instead unintentional. However, as to the second and third factors, in light of the trial court's stated acknowledgement that it was not possible to ascertain whether the undisclosed information was exculpatory or inculpatory, it is not at all clear that foreknowledge of the information would have benefited the defense or that there was prejudice.

**{¶ 38}** In addition to the *Parson* factors, *Lakewood* also focused on the effectiveness of less severe sanctions as an important factor in the balancing test. *Id.* at 5. The trial court did not indicate that it had considered whether a less severe sanction than a dismissal with prejudice would have accomplished the purposes of the discovery rules. While the trial court's decision was generally in accord with earlier holdings by the Eighth District, which declined to apply *Lakewood* to discovery violations committed by the state, those holdings are clearly at odds with the mandates of current Crim.R. 16. To the extent that this

position may have been justifiable under former Crim.R. 16, the current rule makes clear that that is no longer the proper view.

{¶ 39} The state opposed the defendants' motions to dismiss on several grounds, including that the evidence that was not disclosed was not particularly material to the defendants' case and that there was a substantial possibility that the undisclosed evidence could have been inculpatory rather than exculpatory. Although it would have been helpful for the state in opposing the dismissal motions to offer the trial court specific alternatives to dismissal with prejudice, the trial court nevertheless should not have dismissed this case with prejudice without first giving the parties the opportunity to develop the record regarding the other packages and then weighing the relevant factors.

{¶ 40} Although we are not mandating a specific procedural course of conduct in this case, we note that rather than dismissing the case with prejudice, the trial court could have continued the case to allow further inquiry into the details regarding the other packages. *See Lakewood*, 32 Ohio St.3d at 5, 511 N.E.2d 1138 (a continuance should be ordered if it is feasible and would allow for an opportunity to minimize any surprise or prejudice caused by the discovery violation). This was a bench trial, and the defendants were out on bond. Clearly, a continuance to clear up the facts of the discovery violation would have been a feasible alternative.

{¶ 41} Based upon the above analysis, we conclude that the trial court abused its discretion. We emphasize that we do not hold that a discovery violation committed by the state can *never* result in the dismissal with prejudice of a criminal case. That option remains available when a trial court, after considering the factors set forth in *Parson* and in *Lakewood,* determines that a lesser sanction would not be consistent with the purposes of the criminal discovery rules.

### III. Conclusion

**{¶ 42}** For all the foregoing reasons, we hold that the holding in *Lakewood*, 32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus, that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery" applies equally to discovery violations committed by the state and to discovery violations committed by a criminal defendant. Applying that holding to this case, we determine that the trial court abused its discretion.

**{¶ 43}** We therefore reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

**{¶ 44}** We need look no further than Crim.R. 16(L)(1) to decide this case. The rule states:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the

material not disclosed, or it may make such other order as it deems
just under the circumstances.

This court's only inquiry should be whether the trial court abused its discretion in making an order it deemed "just under the circumstances." The trial court gave detailed reasoning for its dismissal of the case against the defendants, and there is no reason for this court to overturn its ruling.

The Inapplicability of *Lakewood*

{¶ 45} *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), has no application in this case. In *Lakewood*, this court addressed a trial court's discovery sanction that excluded all the witnesses the defendant had intended to call at trial. This court found that "the effect of the sanction of exclusion imposed on [the defendant] was to deny him the right to present a defense." *Id*. at 4. The court stated that "exclusion may infringe on a criminal defendant's Sixth Amendment right to present a defense, particularly where, as in this case, all the defendant's witnesses are excluded." *Id*. at 5.

{¶ 46} In *Lakewood*, this court looked to other states' jurisprudence on *the exclusion of witnesses* in determining whether the trial court's sanction had been too harsh:

> The courts of other states, when presented with the claim that *exclusion of a criminal defendant's witnesses* is too harsh a sanction, have held that the trial court must make an inquiry into the surrounding circumstances prior to excluding a party's witnesses. *Before imposing the sanction of exclusion*, the trial court must find that no lesser sanction would accomplish the purpose of the discovery rules and that the state would be prejudiced if the witnesses were permitted to testify.

(Emphases added.) *Id.*

{¶ 47} It was because the sanction imposed in *Lakewood* was an exclusion—which affected the defendant's Sixth Amendment right to present a defense—that this court concluded that the trial court should have considered lesser sanctions: "In this case, the trial court did not indicate that it balanced the state's interests against [the defendant's] Sixth Amendment right to present a defense by considering any sanction other than excluding the testimony of his witnesses." *Id.*

{¶ 48} *Lakewood* does not apply to every discovery sanction; it and the cases it cites deal with the exclusion of evidence offered by a defendant. The holding of *Lakewood* is that a court must apply a balancing test before imposing discovery sanctions against a defendant that result in exclusion of testimony or evidence, but that "[i]t is only when exclusion acts to completely deny [a] defendant his or her constitutional right to present a defense that the sanction is impermissible." *Id.*

{¶ 49} Which of the state's constitutional rights was violated in this case?

{¶ 50} There is no right of complete equality of treatment between the state and a defendant, and the Constitution has seen to that. Is it unfair that the state must prove its case beyond a reasonable doubt rather than by a preponderance of the evidence, or that it must prepare its case quickly so that a defendant may have a speedy trial? Defendants have special rights, and courts must respect those. In determining appropriate discovery sanctions for defendants, courts must be careful to tailor the sanctions so they do not infringe on a defendant's constitutional rights. The state does not have those same rights; thus, a trial court is not constrained to impose the least severe sanction possible to preserve those nonexistent rights.

## The Trial Court Did Not Abuse Its Discretion

{¶ 51} The trial court was not required to give the state the least severe discovery sanction available. The trial court's duty in this case was to simply abide by Crim.R. 16(L)(1). It did, by making an order it deemed just under the circumstances. It made clear that the fact that the state had failed to disclose to the defendants that it had intercepted similar packages addressed to different addressees meant that additional evidence—all the evidence related to those other packages—was also not provided to the defendants. In short, the agent's testimony had opened Pandora's (FedEx) box. The trial court reasoned:

I agree it could be inculpatory or exculpatory. The issue that I am faced with now is, as this witness testified, it became known to the State of Ohio * * * and now defense counsel, about a number of other packages that were recovered on the 13th and the 17th of March of 2010.

In looking at those, I'll point out on the record there are a number of items which I believe would be important to the defense to have the ability to review or research that may be beneficial or may not be with respect to the case.

Just pointing out some of those, even that the special agent pointed out, the addresses. She had all the addresses. She was not able to give those specifically because they were on different papers that she had back at her office.

She was able to point out the names, again, similarities in names, relationships in names. I believe at least of the eight or of the seven, as I look at them, there may be seven females on all the names. Is there a possibility of a relationship? Are the addresses

related? Are the possibilities of prosecution or any of those individuals indicted, are they charged?

The special agent indicated that there was a single report for each of those boxes, so possibly six additional reports that would have been, I believe, needed to be provided in order for the case to be looked at in a fashion that was fair to both of the Defendants charged.

Now, you take all of that that wasn't given. Then you say, Well, okay, if that wasn't given, why should it have been given? Is there any other connection? None of those names matched the Defendants in this case, the addresses didn't match the Defendants in this case. And so why should the other information come in?

I think the tie possibly comes, as the special agent continued to testify, that all seven of the boxes were very similar in nature and all were the same box size. All seven of them were addressed and came from either the Phoenix or Tempe, Arizona area from a Kinko's store.

All of them were handwritten with the same handwriting. Possibly the inside packaging on some of them were not exactly the same, but all of them came in a very similar packaging, birthday packaging, birthday cards, and so forth.

To then relate these seven boxes together, that I believe all the other information should have been supplied, the reports, the addresses, the names, the investigation, whether there were charges, and quite possibly maybe if there was an indictment, which I don't know if there was or wasn't, and I don't think anyone can speak to that.

You know, based on those indictments, did someone own up to a scheme that maybe would have been information and evidence that could have been brought in here and testimony by another person to exonerate the two individuals that were charged in this case.

Based on that and the testimony given by this witness that then became known to all of us here this morning and then later this afternoon, I am going to find that the State of Ohio is going to be barred from future prosecution of this case and that double jeopardy does attach.

{¶ 52} The trial court made its decision after giving each side the opportunity to argue whether dismissal was appropriate. It granted a recess at the prosecutor's request so that the prosecutor could research the issue. The state never sought a continuance on the record, in contrast to the state's request in one of the cases in conflict with the court's decision below, *State v. Siemer*, 1st Dist. Nos. C-060604 and C-060605, 2007-Ohio-4600, 2007 WL 2541121, ¶ 4. In the other conflict case, *State v. Engle,* 166 Ohio App.3d 262, 2006-Ohio-1884, 850 N.E.2d 123 (3d Dist.), the trial court never gave the state a chance to respond to the defendant's motion to dismiss. Finally, Demetrius Darmond had previously been under indictment in case No. CR-535469 for the same charges. That case was dismissed without prejudice by the state on August 9, 2010, "for further investigation." The state reindicted him in this case on August 11, 2010. *State v. Darmond*, 8th Dist. Nos. 96373 and 96374, 2011-Ohio-6160, 2011 WL 5998671, ¶ 2, fn. 1.

{¶ 53} Can we really say that the trial judge abused his discretion in dismissing this case with prejudice? Should the trial judge have continued this case until the attorneys for Darmond and his mother-in-law, Iris Oliver, chased

down every lead that might have arisen from the undisclosed packages? Would it be in the best interest of justice to routinely grant long continuances to correct prosecutorial ball-fumbling? How many mistakes are prosecutors allowed in one case before a continuance to allow for further investigation is deemed too weak a sanction?

Conclusion

**{¶ 54}** The state made a mistake in this case, a mistake not easily or quickly corrected. Out of that mistake, the state has somehow become the wronged party, and it asks this court to ensure that in future cases, trial courts impose the least severe sanction possible upon the state when it innocently withholds evidence from defendants. This request is based upon the fact that in *Lakewood*, this court protected the constitutional rights of defendants by requiring that discovery sanctions not infringe on a defendant's right to present a defense. The state's premise is that the state and defendants are equals; but the fact is that we have a Constitution because the state and individuals are not equal. The intent of the discovery rules is to guarantee fair play between the state and the defendant, not to change the nature of the game.

_____

William D. Mason, Cuyahoga County Prosecuting Attorney, and Katherine Mullin, Assistant Prosecuting Attorney, for appellant.

John P. Parker, for appellee Demetrius Darmond.

Jeff Hastings, for appellee Iris Oliver.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, urging reversal on behalf of amicus curiae Ohio Prosecuting Attorneys Association.

_____